UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRUCE MICHAEL MCQUILLIN,

    Plaintiff,

v.                                        Case No.:  6:22-cv-1517-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Bruce Michael McQuillin seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

**C.   Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on March 9, 2020, alleging disability beginning July 22, 2012. (Tr. 68, 179-88). The application was denied initially and on reconsideration. (Tr. 68, 83). Plaintiff

requested a hearing and on August 19, 2021, a hearing was held before Administrative Law Judge Emily R. Statum ("ALJ"). (Tr. 36-58). On January 3, 2022, the ALJ entered a decision finding Plaintiff had not been under a disability from July 22, 2012, the alleged onset date, through June 30, 2015, the date last insured. (Tr. 19-31). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on July 6, 2022. (Tr. 1-5). Plaintiff began this action by Complaint (Doc. 1) filed on August 25, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 16).

## D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015. (Tr. 21). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of July 22, 2012, through his date last insured of June 30, 2015. (Tr. 21). At step two, the ALJ found through the date last insured, Plaintiff had the following severe impairments: "closed head injury with traumatic brain injury involving right-sided weakness, seizures, multiple facial fractures; presbyopia; hyperlipidemia; respiratory failure status/post tracheostomy tube placement and removal; severe oropharyngeal deficits; methicillin-resistant staphylococcus aureus (MRSA); degenerative changes at C6/7; benign-appearing

intramuscular lipoma in the left paraspinal musculature; tachycardia; bilateral pars defects at L5; depression; anxiety; dyslipidemia; and chronic obstructive pulmonary disease." (Tr. 21). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 22).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except with no exposure to hazards such as machinery or heights, no climbing of ladders, ropes or scaffolds, no exposure to fumes, odors, dusts, gases, or poor ventilation, and with an ability for performing simple routine work during an eight-hour workday with occasional contact with coworkers and the general public.

(Tr. 23).

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform his past relevant work as a tractor trailer driver. (Tr. 29). At step five, the ALJ found that through the date last insured and considering Plaintiff's age (52 on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 29). In interrogatories, the vocational expert

stated that a person with Plaintiff's limitations could have performed such occupations as:

 (1) photocopying machine operator, DOT 207.685-014,[1] light, SVP 2

 (2) routing clerk, DOT 222.587-038, light, SVP 2

 (3) marker, DOT 209.587-034, light, SVP 2

(Tr. 30). The ALJ concluded that Plaintiff had not been under a disability from July 22, 2012, the alleged onset date, through June 30, 2015, the date last insured. (Tr. 30).

## II. Analysis

On appeal, Plaintiff raises one issue: whether the ALJ's RFC finding is contrary to law and not supported by substantial evidence, as it is based on her lay interpretation of the raw medical data and patently undermined by her own description of the record. (Doc. 18, p.4). Basically, Plaintiff argues that the RFC should have been limited to sedentary, not light work. (Doc. 18, p. 8). Plaintiff claims that the ALJ relied on her own lay judgment about the raw medical data, but should have obtained the testimony of a medical expert, returned the file to the State-Agency non-examining consultants for an updated review of the entire file, or scheduled a consultative examination. (Doc. 18, p. 11). These arguments are unavailing.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

Some background information is helpful. On July 22, 2012, Plaintiff was transported to the hospital after a home invasion, and found unresponsive on the ground. (Tr. 25, 1041). He suffered from a brain injury, fractures of his facial bones, respiratory failure, and as well as other complications. (Tr. 25). He was moved to a different hospital, then to a long-term assisted care facility, then to an acute inpatient rehabilitation facility, and eventually released with the recommendation of 24-hour care and supervision. (Tr. 26). He had made some improvements. (Tr. 25-26). Later, in November 2012, Plaintiff was incarcerated in a county jail, convicted of sexual battery on a minor, and later moved to a Department of Corrections facility. (Tr. 54-55, 1040).

The ALJ explained that the period of interest in this case is from the alleged onset date of disability, July 22, 2012, through June 30, 2015, the date last insured. (Tr. 24). Of note, Plaintiff was incarcerated from November 2012 through 2020. (Tr. 24). The ALJ explained that even though a disability application may be adjudicated while an individual is incarcerated, both Title II and Title XVI programs prohibit payments to most prisoners. (Tr. 24-25). The ALJ found: "[t]herefore, the practical period at issue was between July 2012 through November 2012. However, this does not change the legal standards by which the disability case is decided, and the entire period at issue will be adjudicated." (Tr. 25).

At the Department of Corrections, Plaintiff underwent an initial physical exam in September 2013. (Tr. 26, 997-1004). Plaintiff's general health was good, his lungs were clear, his upper and lower extremities were normal, and his spine had normal strength. (Tr. 997-1004). Plaintiff also underwent psychological screening, and he reported that his mind was not right, nothing made sense to him, and he had difficulty with mobility, comprehension, manual dexterity, memory, and speech. (Tr. 26). The examiner found Plaintiff: was fully oriented; had slow, monotone, and slurred speech; was cooperative; had good eye contact; had a neutral mood with broad affect; had coherent thinking; was not delusional; had poor to fair judgment and insight; and had no suicidal or homicidal ideations. (Tr. 26). Plaintiff's gait was crooked and shuffling. (Tr. 26).

The ALJ summarized the remaining medical records from the Department of Corrections. (Tr. 26-27).[2] Mentally, Plaintiff reported at various times, symptoms of nervousness, jumpiness, discouragement, despair, euphoria, intermittent instability, and memory loss. (Tr. 26-27). The records indicate that Plaintiff had received no discipline reports, made satisfactory institutional adjustment, had complied with mental health call outs and medication management, and was cooperative and receptive. (Tr. 26-27). Physically, Plaintiff's lungs were clear, his

---

[2] Plaintiff did not dispute the ALJ's summarization of the record during the period of interest. (Doc. 18, p. 6).

gait was staggered but ambulatory, he had no seizures since 2012, he had reduced motor strength in his upper and lower extremities, and he had a full range of motion. (Tr. 26-27). On July 27, 2015, after the date last insured, the records reflected that Plaintiff walked with a limp, he had reduced mobility of his right upper extremity, and he was precluded from heavy lifting of more than 10 pounds. (Tr. 27).

The ALJ found Plaintiff capable of performing light work, which assumes the ability to stand/walk for approximately 6 hours in an 8-hour workday while lifting 20 pounds occasionally and 10 pounds frequently. (Doc. 18, p. 8). Plaintiff argues that his testimony showed only a limited, sporadic ability to perform daily activities, and as documented by the medical records, his gait was impaired. (Doc. 18, p. 8). Plaintiff claims that based on his testimony and gait problems, he should have been limited to sedentary work. (Doc. 18, p. 8). Plaintiff also argues that just as the State Agency consultants found insufficient evidence to evaluate Plaintiff's limitations, so too the ALJ should have made the same determination. (Doc. 18, p. 8-9). And if the ALJ had made that same finding, she should have ordered the file to be returned to the State Agency consultants for an updated review of the entire file, ordered a consultative examination, or obtained medical expert testimony. (Doc. 18,p. 9-11).

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In

determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)).

Prior to step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014), *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007). That said, an ALJ may not "'may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.'" *Williams v. Barnhart*, 140 F. App'x 932, 934 (11th Cir. 2005) (quoting *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir.1992)). But an ALJ can reject a physician's opinion when the evidence supports a contrary conclusion. *Id.* Indeed, while an ALJ may not make medical findings, an ALJ has the responsibility to resolve conflicting medical opinions. *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016).

Plaintiff argues that based on his testimony "of only limited, sporadic, ability to perform daily activities" combined with the ALJ's documenting Plaintiff's gait impairment establishes that Plaintiff should be limited to sedentary work. (Do. 18,

p. 8). Plaintiff does not expound on exactly which daily activities are sporadic. (Doc. 18, p. 8). Without more, this reason is unpersuasive. As to Plaintiff's gait impairment, the ALJ noted that Plaintiff's gait was crooked, shuffling, and abnormal. (Tr. 26-27). But the ALJ also noted that the medical records showed Plaintiff was ambulatory and the records contained no references to assistive devices. (Tr. 26-28). In her conclusion, the ALJ specifically determined that the RFC assessment was supported by Plaintiff's mild to moderate right-side weakness, included environmental limitations as a precaution, and included mental health limitations based on Plaintiff's depression, anxiety, and mood disorder, as well as any residuals from his traumatic brain injury. (Tr 29). The ALJ considered all the relevant evidence, including Plaintiff's subjective complaints, testimony, and the medical evidence of record to assess the RFC.

Plaintiff also contends that the ALJ should have returned the file to the State Agency consultants for an updated review of the entire file, ordered a consultative examination, or obtained medical expert testimony. (Doc. 18, p. 11). A plaintiff bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Even so, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record." *Id. See* 20 C.F.R. § 404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your

complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.").[3]

While an ALJ has this duty, she "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Further, the ordering of a consultative examination is a discretionary matter for the ALJ and should be sought "'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)).

In order to justify a remand on this basis, a plaintiff must show that his right to due process has been violated to such an extent that the record contains evidentiary gaps, which resulted in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). That said, a mere lack of a consultative examination is inadequate to meet a plaintiff's burden to establish prejudice.

---

[3] When a claimant is not represented at a hearing and has not waived his right to representation, then the ALJ has a "special duty" to develop the record. *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). In this case, Plaintiff was represented by counsel at the hearing and thus the ALJ only had a basic duty to develop the record. (Tr. 36-58).

*Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) (finding that the plaintiff did not explain how the absence of certain evidence precluded the ALJ from making an informed decision, nor did the plaintiff explain how such an assessment would have affected the ALJ's overall disability determination).

Here, Plaintiff has not shown an evidentiary gap in the medical records, which resulted in clear prejudice or unfairness. The records from the Department of Corrections, although not overwhelming in number, covered the period at issue and provided the ALJ with sufficient evidence to establish an RFC. Clearly, the July 2012 injuries were initially significant, but by the 2013 initial physical examination, the examiner determined that Plaintiff was in good health overall. Even though diagnosed with COPD, Plaintiff's examinations showed his lungs were clear. His abnormal gait was noted, but the records contained no references to assistive devices and conveyed he was able to ambulate. The ALJ also noted that the State agency consultants found there was insufficient medical evidence near the date insured to make a determination of disability, but found these opinion not persuasive. (Tr. 28). The ALJ explained that even though the medical evidence of record before the date last insured was minimal, there was enough evidence to establish Plaintiff's RFC. (Tr. 28). As stated above, the ALJ thoroughly explained how she assessed Plaintiff's RFC. She relied on the medical records and did not substitute her opinion for the medical evidence of record, but considered the medical evidence as is required under

the Regulations.

In addition, Plaintiff was represented by counsel at the hearing. (Tr. 36). When asked if the record was complete, counsel indicted that he was waiting for one medical record from Center Well. (Tr. 39). Counsel did not request that the file be returned to the State Agency consultants for an updated review, request the ALJ order a consultative examination, or request the ALJ obtain medical expert testimony. Thus, any alleged error was invited and on appeal a party may not challenge as error a ruling or other trial proceeding invited by that party. *Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969, n.3 (11th Cir. 2013) (citing *Ford ex. rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1293-94 (11th Cir.2002)).

Substantial evidence supports the ALJ's RFC assessment, and substantial evidence supports the ALJ's decision not to return the file to the State Agency consultants for an updated review of the entire file, order a consultative examination, or obtain medical expert testimony. After review of the decision and given the medical records and other records before the ALJ, the ALJ did not err.

## III.  Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 23, 2023.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties